## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                            CASE NO.  06-20674

-vs-

                            PAUL D. BORMAN

BOBBY SMITH,                UNITED STATES DISTRICT JUDGE

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT I OF THE FIRST SUPERSEDING INDICTMENT

Before the Court is Defendant's December 28, 2006 Motion to Dismiss Count I of the First Superseding Indictment. (Docket No. 11). The Government filed its Response on January 18, 2007. (Docket No. 17). The Court held a motion hearing on February 22, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion to Dismiss Count I of the First Superseding Indictment.

## I.      BACKGROUND

Defendant Bobby Smith ("Defendant") was convicted of first-degree rape and sodomy, in the State of New York on November 13, 1989. Defendant was sentenced in New York for a period of eight (8) to sixteen (16) years. Defendant was released from state prison custody on March 20, 2004.

Prior to his state prison release date, on February 20, 2004, Plaintiff was advised by a corrections counselor of his obligation under New York state law to register as a sex offender. At that time, Defendant was provided with the New York State Sex Offender Registration Form.

1

Defendant understood that he was required (1) to register with the New York Division of Criminal Justice Services ("DCJS") within fifteen (15) days of his release so that the authorities could verify Defendant's residence upon release from custody; (2) to notify DCJS within ten (10) days of establishing another residence; (3) to register as a sex offender if he moved to another state within ten (10) days of establishing a residence; and (4) to register in any state in which he was employed or was a student.

It is undisputed that Defendant did not comply with the New York State sex offender requirements. Indeed, upon his release from custody, Plaintiff provided to New York a false post-release address in Brooklyn, New York. At some point after his release from New York state prison, but by August 2004, Defendant moved to Detroit, Michigan. After the New York authorities learned of Defendant's residence in Detroit, the New York Sex Offender Monitoring Unit sent Defendant a letter on January 3, 2006, reminding him of his New York state registration requirement. Defendant did not respond to that letter, nor did he register as a sex offender in New York or in Michigan, as required under Michigan law. New York authorities have not requested that the State of Michigan extradite Defendant to New York.

The United States Attorney's Office in Detroit secured a One-Count Indictment on December 20, 2006, charging Defendant with a violation of Title 18 U.S.C. § 2250, Failure to Register as a Sex Offender, between April 2004 and December 20, 2006. On December 28, 2006, Defendant filed a Motion to Dismiss the single-count Indictment.

Thereafter, on January 18, 2007, the United States Attorney secured a First Superseding Indictment against Defendant, charging two offenses. Count I (Felony): Failure to Register as a Sex Offender, under 18 U.S.C. § 2250, for the period between July 27, 2006 and December 20,

2

2006; Count II (Misdemeanor): Failure to Register as a Sex Offender, under 42 U.S.C. §

14072(i) for the period between August 2004 and July 27, 2006. July 27, 2006 was the date of

enactment of 18 U.S.C. § 2250, the statute that created a new 10 year felony offense for failure

to register. Previous to July 27, 2006, federal prosecution for failure to register was limited to the

misdemeanor offense contained in Title 42, which, as evidenced by Count II of the

Superseding Indictment, continues to be an available statute for prosecution for failure to register

after the July 27, 2006 enactment of the felony offense. Thus, the Government has now charged

two different criminal offenses covering the same conduct charged in the initial single-count

felony indictment under 18 U.S.C. § 2250.

Title 18 U.S.C. § 2250 provides, in pertinent part, whoever (1) is required to register as a

sex offender under SORNA, (2) travels in interstate commerce, and (3) knowingly fails to

register as required by SORNA shall be imprisoned not more than 10 years. In the instant case,

the second element is at issue: – travels in interstate commerce.

Defendant's Motion to Dismiss argues that the use of the phrase "travels in interstate

commerce" in 18 U.S.C. § 2250 is written in forward-looking language, and therefore the law

applies only to an individual who travels after the July 27, 2006 implementation of the law.

Defendant further contends that the language is clear, no "statutory construction" is required, and

that given the "plain meaning" of the statute, to apply § 2250 to his conduct would violate the

clear intent of Congress. Defendant further contends that applying § 2250 to him would violate

the *ex post facto* clause of the Constitution.

The Government response argues that, although enacted on July 27, 2006, § 2250 applies

retroactively to individuals who traveled in interstate commerce prior to its enactment, if he

failed to register after July 27, 2006. The Government contends that (1) the Supreme Court, and the majority of state courts, have held that the retroactive application of sex offender registration requirements, due to their civil and non-punitive natures, do not violate the *ex post facto* clause whose application is limited to criminal laws; and (2) the Government has met the jurisdictional requirement of the statute by asserting that Defendant traveled from New York to Detroit in 2004.

## II.    ANALYSIS

### A.    Adam Walsh Child Protection Act of 2006

In 1994, Congress passed the Violent Crime Control and Law Enforcement Act, which included Title XVII: the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act. P.L. 103-322. Title XVII established, inter alia, a requirement that sex offenders register a current address with a state law enforcement agency for a period of ten (10) years after release from prison. If the individual knowingly failed to register under the law, the individual faced up to one year imprisonment; a second-time offender faced up to ten (10) years imprisonment. 42 U.S.C. § 14072(i).

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act. P.L. 109-248. The 2006 Act amended the registration requirements for sex offenders, and increased the criminal penalties for individuals who failed to comply with the Act's requirements. According to the legislative history, the Act created "a new Federal crime" where "[s]ex offenders who fail to comply will face felony criminal prosecution." H.R. REP. No. 109-218, at 36 (2005).

4

The specific provision at issue in the instant case, Section XXX of the 2006 Act, codified in 18 U.S.C. § 2250, provides, in relevant part:

(a) In general.– Whoever –

 (1) is required to register under the Sex Offender Registration and Notification Act ("SORNA");

 (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

 (B) travel<u>s</u> in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

 (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

(emphasis added).

The 2006 statute also provided that Attorney General would have the authority to specify how the Act's registration requirements would apply to those individuals convicted before July 27, 2006:

 (d) Initial registration of sex offenders unable to comply with subsection (b) of this section

 The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). The Attorney General has not, as of March 2, 2007, specified the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006.

Further, this Court notes that the 2006 Act contains language that will, <u>in the future</u>, repeal the misdemeanor offense, 42 U.S.C. § 14072, either (1) three years after July 27, 2006 or (2) one year after the date on which the software described in 42 U.S.C. § 16923 becomes available. P.L. 109-248, Title I, § 129. Thus, the misdemeanor statute relied upon in Count II of the instant indictment continues to apply to Defendant's conduct after July 27, 2006. Defendant's motion does not challenge Count II, applying the misdemeanor statute, 42 U.S.C. § 14072(i).

**B.     "Travels" versus "Traveled" in Interstate Commerce**

Defendant urges the Court to limit the applicability of 18 U.S.C. § 2250 to a sex offender who travel<u>s</u> in interstate commerce after the effective date of the Act, July 27, 2006. Defendant argues that the statute's use of the term "travels," rather than "traveled," confirms a forward-looking intent that the law would apply to one who travels in interstate commerce after July 27, 2006, and thereafter fails to register according to the terms of the Act.

1.     <u>Statutory Construction</u>

The United States Court of Appeals for the Sixth Circuit has recently summarized the initial analysis for questions of statutory construction; start with the language of the statute, and if it is clear and unambiguous, adhere to the language:

> The starting point in any case involving the meaning of a statute is the language of the statute itself. A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common

meaning. In construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses its legislative purpose. If the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced.

*United States v. Plavcak*, 411 F.3d 655, 660-61 (6th Cir. 2005) (internal quotations and citations

omitted); *see Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). Sixth Circuit

precedent elaborates:

> "The starting point in interpreting a statute is its language." "Our interpretation of legislative acts is limited for if the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." When a statute is unambiguous, resort to legislative history and policy considerations is improper.

*In re Koenig Sporting Goods*, 203 F.3d 986, 988-89 (6th Cir. 2000) (internal citations omitted).

The Supreme Court has also noted that in the context of criminal laws, "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992); *see also United States v. Valentine*, 63 F.3d 459, 463 (6th Cir. 1995). Under principles of statutory construction, "a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." *Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422, 2428 (2006).

Following the rules of statutory construction summarized in *Plavcak*, the Court holds that Defendant is not subject to prosecution under the Count I charge: 18 U.S.C. § 2250. When Defendant traveled to Michigan in August 2004, he was required, under 42 U.S.C. § 14072(g), to register as a sex offender with the state and federal authorities within ten days of his change in residence. Under § 14072(i), which was in effect at that time and today, as well, Defendant was

7

subject to a maximum of one 1 year imprisonment for a first offense and up to 10 years for a

second offense, for failure to register as a sex offender.

On July 27, 2006, Congress enacted SORNA which, in 18 U.S.C. § 2250, increased the

criminal penalty for first-time non-compliance with the sex offender registration requirements.

The elements of Failure to Register as a Sex Offender under § 2250 are that an individual (1) be

required to register as a sex offender under SORNA; (2) *travels* in interstate or foreign

commerce; and (3) knowingly fail to register or update a registration under SORNA's

requirements. In this case there is no evidence or claim by the Government that Defendant, since

the July 27, 2006 effective date of the Act, did travel in interstate commerce, and then knowingly

fail to register.

The Court assumes that Congress' choice of verb tense – travel<u>s</u>, rather than travel<u>ed</u> –

was significant. *Wilson*, 503 U.S. at 333. Additionally, there is no explicit language or necessary

implication that would direct this Court to construe the statute as applying retroactively.

*Fernandez-Vargas*, 126 S. Ct. at 2428.[1]

2.     Violation of the Ex Post Facto Clause of the Constitution

Article I, Section 9, subsection (3) of the United States Constitution states, "No Bill of

Attainder or ex post facto law shall be passed."

Defendant maintains that applying Title 18 U.S.C. § 2250 to him, thereby increasing his

potential maximum incarceration from 1 year to 10 years, would constitute an unconstitutional

---

[1] The Court notes that even if § 2250 were susceptible to two different rational readings of its application, the rule of lenity instructs the Court to choose the less harsh interpretation. *Pasquantino v. United States*, 544 U.S. 349, 383 (2005) ("[W]hen confronted with two rational readings of a criminal statute, one harsher than the other, [the courts] are to choose the harsher only when Congress has spoken in clear and definite language.").

*ex post facto* application of the law. The Supreme Court has set forth the following formulation

of the *ex post facto* doctrine:

> The ex post facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; *or imposes additional punishment to that then prescribed*. The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation.
>
> In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.
>
> . . . .
>
> Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increased punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Weaver v. Graham*, 450 U.S. 24, 28-31 (1981) (internal quotations and citations omitted)

(emphasis added).

It is undisputed that § 2250, the felony statute (10-year maximum) enacted in July 2006,

increases the federal penalty for failure to register as a sex offender from that previously set by §

14072(i), a one-year incarceration for a first-time offender.

In support of its contention that § 2250 does not constitute an invalid *ex post facto*

application on Defendant, the Government argues that (1) the Supreme Court has held that sex

offender registration requirements are regulatory, and not punitive for the purposes of the *ex post

facto* clause; (2) federal cases involving felon-in-possession, child support, and practicing

medicine without a license have withstood *ex post facto* challenges for conduct occurring before

9

the enactment of the statute; and (3) failure to register as a sex offender should be categorized as a "continuing violation," akin to conspiracy, thus immune from an *ex post facto* challenge. The Court finds none of these arguments convincing.

The Court will deal initially with the second and third arguments. As to the second argument, the Government compares the instant crimes charged to the crimes of felon-in-possession, child support, and practicing medicine without a license – that comparison does not address the central issue here – an increase in punishment for an existing offense.

As to the Government's third argument seeking to compare the instant offense as a "continuing violation," like conspiracy, the Court disagrees. The instant crime occurs on the 11th day after the defendant travels in interstate commerce from one jurisdiction to another, and fails to register after 10 days. It is not a continuing offense where an individual can be prosecuted separately for each day he fails to register after the 10th day. Indeed, the Court notes, but need not decide, the issue of whether in the instant case the Government's two charges reflect a single violation – failure to register 10 days after Defendant relocated to another jurisdiction – contained in two separate counts.

Finally, as to the first argument, that sex offender registration requirements are regulatory, and not punitive for purposes of the *ex post facto* law, the Government relies upon the Supreme Court's holding in *Smith v. Doe*, 538 U.S. 84 (2003): that since sex offender registration requirements are not punitive in nature, they do not implicate the *ex post facto* prohibition. The Government's position is that since SORNA is a registration statute, it is a "civil, nonpunitive" statute, and therefore § 2250 is immune from *ex post facto* classification.

10

However, *Smith* is not comparable to the instant case. In *Smith,* the respondents challenged an Alaska state statute that required them to register as sex offenders, even though they had been convicted before the statute was enacted. *Id*. at 91. A sex offender who knowingly failed to comply with the act was subject to criminal prosecution. The issue before the Supreme Court was whether the registration requirement was a retroactive punishment prohibited by the *ex post facto* clause of the Constitution. In response to a motion for declaratory judgment seeking to void the statute as *ex post facto*, the Supreme Court concluded that the registration requirements were "civil procedures" and not "criminal sanctions," *Id*. at 96, and therefore refused to strike down the Alaska registration statute.

The Supreme Court described the framework for its inquiry as follows:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. Because we ordinary defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Id*. at 92 (internal citations and quotations omitted).

That said, the Supreme Court first proceeded to construe the statute. Did the Alaska legislature pick one label or the other – civil or criminal? The Supreme Court held in *Smith* that the Alaska legislature selected "civil." In the instant case, Congress picked "criminal," the felony failure to register violation in Title 18 of the Federal Code: Crimes and Criminal Procedure. The offense charged in Count II, contained in 42 U.S.C. § 14072(i), was placed by Congress in Title 42 of the Federal Code: Public Health and Welfare. It is significant that the offense punishment

in 42 U.S.C. § 14072(i) contains a felony penalty provision of up to 10 years imprisonment for a second offense under that subsection. Thus, Congress could and did decide to place that felony offense in Title 42: Public Health and Welfare. The felony charge contained in Count I of the instant indictment was placed in Title 18: Criminal Code.

This Court concludes that this manner of codification in the criminal code evidences Congress' intention to more severely punish a first offender, a critical factor, in *ex post facto* analysis. Congress has previously established a misdemeanor violation for the failure to register violation.

Whereas the Supreme Court held that Alaska's civil regulatory scheme was nonpunitive and its retroactive application did not violate the *ex post facto* clause, this Court concludes that the instant legislation, with its increased felony punishment placed in Title 18, does violate the *ex post facto* clause, insofar as the Government seeks to apply it to a defendant who traveled in interstate commerce prior to July 27, 2006, did not register during the 10-day window for registration.

This Court finds that insofar as Congress selected the word "travels," it denotes an action element, requiring that Defendant take certain present tense action under the law. If Congress had selected the term "traveled," that would indicate the status of Defendant – one who had previously traveled in interstate commerce. In the instant case, no crime has been committed by Defendant under 18 U.S.C. § 2250 since July 27, 2006, for the charge in the Count.

The Supreme Court in *Smith* addressed the narrower issue of whether a sex offender, who was convicted before the enactment of the state registration statute, could be required to register as a sex offender under that law. The Supreme Court did not reach the question in the instant

12

case – i.e., whether the Government can create enhanced criminal penalties (§ 2250), in the criminal provisions of the legislative code, and apply them to an individual who traveled in interstate commerce before the effective date of the Act. The Government's attempt to hide the enhanced penalties in § 2250 under the greater "civil" purpose of SORNA runs afoul of the longstanding rule that "the ex post facto effect of a law cannot be evaded by giving a civil form to that which is essentially criminal." *Burgess v. Salmon*, 97 U.S. 381, 385 (1878); *see Collins v. Youngblood*, 497 U.S. 37, 46 (1990) ("[T]he ex post facto] prohibition is addressed to laws, whatever their form, which make innocent acts criminal, alter the nature of the offense, or increase the punishment").

The Government's Brief states:

> 18 U.S.C. § 2250 is not an ex post facto law because it does not criminalize or increase the penalties for a defendant's acts that occurred before its passage.

(Pl. Br. 14). The Court disagrees, and finds that 18 U.S.C. § 2250 violates the *ex post facto* clause because it increases the penalty, from 1 year to 10 years, for a first offender defendant who travels in interstate commerce prior to July 27, 2006, and thereafter fails to register as a sex offender.

Title 18 U.S.C. § 2250, enacted in July 2006, requires applies to an individual who travel<u>s</u> in interstate commerce and fails to register as a sex offender. Defendant travel<u>ed</u> in interstate commerce in 2004. Defendant is not an individual who travel<u>s</u> in interstate commerce after July 27, 2006.

## III.    CONCLUSION

The Court concludes that Defendant's conduct, as alleged in Count I, traveled in interstate commerce prior to July 27, 2006, does not violate the clear language of the statute, travel<u>s</u> in interstate commerce. Accordingly, 18 U.S.C. § 2250 does not apply to Defendant.

On a second ground, the Court concludes that to apply to Defendant the enhanced punishment provision contained in § 2250, when his travel in interstate commerce occurred prior to July 27, 2006, would violate the constitutional prohibition against *ex post facto* legislation.[2]

For the foregoing reasons the Court **GRANTS** Defendant's Motion to Dismiss Count I of the First Superseding Indictment; this case will proceed as to Count II.

**SO ORDERED.**

                                          **s/Paul D. Borman**
                                          **PAUL D. BORMAN**
                                          **UNITED STATES DISTRICT JUDGE**

**Dated:  March 8, 2007**

---

[2]     The Court notes that three recent district court decisions from other circuits have held to the contrary, that 18 U.S.C. § 2250 survives an *ex post facto* challenge.    In *United States v. Madera,* – F. Supp. 2d – , 2007 WL 141283 (M.D. Fla. 2007), the defendant argued that § 2250 "purport[ed] to punish [him] for acts committed prior to the passage of the Act" since the "qualifying sex offense conviction occurred [in 2005], after which he traveled to Florida, and only after both these events occurred did Congress pass the Act and accompanying crime. . . ." *Id*. at *5. The court analyzed these contentions under *Smith v. Doe* and concluded that requiring the defendant to register as a sex offender was "civil, nonpunitive," thus not susceptible to *ex post facto* challenges. *Id*. at *5-6. The court did not discuss the implications of the fact that the defendant traveled in interstate commerce before the passage of the Act.

     In *United States v. Templeton*, No. 06-291, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007) (unpublished), the court similarly found that § 2250 withstood a Commerce Clause and ex post facto challenge. The court dismissed the *ex post facto* challenge, relying upon *Smith v. Doe*. *Id*. at *4-5.

     In *United States v. Manning*, No. 06-20055, 2007 WL 624037 (W.D. Ark. Feb. 23, 2007) (unpublished), the court, following Madera, also concluded that § 2250 did not violate the ex post facto clause, since it was "not punitive, but a civil regulatory scheme with no punitive purpose or effect." *Id.* at *1.

## CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 8, 2007.**

**s/Denise Goodine**
**Case Manager**